<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

LUIS RODRIGUEZ-OCASIO, *et al.*,

     Plaintiffs,

     v.

MHC RECEIVABLES LLC *et al.*,

     Defendants.

---

No. 24cv6493 (EP) (MAH)

**MEMORANDUM ORDER**

**PADIN, District Judge.**

When a credit card bill is not paid, the credit card company may "charge off" the account balance, meaning the lender ceases "efforts to bring the account current" and closes the account. *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 181 n.3 (D.N.J. 2012). After the account is closed, the charged-off balance is referred to debt collectors for collection. *Id.* Plaintiffs, Luis A. Rodriguez-Ocasio and Felicia Ann Earle (collectively, "Plaintiffs"), allege that during the charge off process of their accounts, Defendants, MHC Receivables LLC ("MHC"), FNBM LLC ("FNBM"), Credit Asset Sales LLC ("Credit Asset Sales"), Resurgent Acquisitions LLC ("Resurgent"), and LVNV Funding LLC ("LVNV") (collectively, "Defendants"), unlawfully purchased and enforced Plaintiffs' consumer debts by failing to first obtain a license to do so, as Defendants were required to under the New Jersey Consumer Finance Licensing Act ("NJCFLA"), N.J. Stat. Ann. § 17:11C-3. D.E. 1-2, Ex. A ("Complaint" or "Compl."). Plaintiffs allege that as a result, the credit accounts became void and unenforceable when the Defendants took assignment of them. *Id.* Plaintiffs bring various claims pursuant to the NJCFLA and claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Compl.

After Plaintiffs originally filed the Complaint in the Superior Court of New Jersey, Essex

County, Law Division, Defendants properly removed the case to this Court.  D.E. 1 ("Notice of Removal").   Following the parties' submissions of pre-motion letters—in which the parties disputed whether Plaintiffs were bound to arbitrate their claims—the Court ordered the parties to engage in discovery limited to the issue of arbitrability.  D.E. 11.  After the completion of that discovery, Defendants now move to compel arbitration of all claims pursuant to an arbitration agreement.   D.E. 60-1[1] ("Motion" or "Mot.").   Plaintiffs oppose the Motion.   D.E. 61 ("Opposition" or "Opp'n").  Defendants reply.  D.E. 63 ("Reply").

The Court decides the Motion without oral argument.  *See* Fed. R. Civ. P. 78 and L. Civ. R. 78.1(b).   For the reasons set forth below, the Court will **GRANT** Defendants' Motion, **COMPEL** arbitration of all claims, and **DISMISS** Plaintiffs' Complaint *without prejudice*.

## I.     BACKGROUND

### A.     Rodriguez-Ocasio Account

On or around March 3, 2021, Luis A. Rodriguez-Ocasio ("Rodriguez-Ocasio") opened a credit card account with Credit One Bank (the "Rodriguez-Ocasio Account").  Mot. at 5.  After his card was opened, Rodriguez-Ocasio received a mailing from Credit One Bank containing a credit card and a copy of the terms and conditions that governed the account.  D.E. 60-3, Ex. A (the "Rodriguez-Ocasio Card Agreement").  The Rodriguez-Ocasio Card Agreement indicated that Rodriguez-Ocasio accepted the agreement "when [he] use[d] the Account." *Id.* at 2.  Rodriguez-Ocasio then used his account.  D.E. 60-3, Ex. B.

After Rodriguez-Ocasio did not repay a balance owed on the credit card, Credit One Bank "charged-off" the account balance and "followed its standard procedure for referring unpaid credit card accounts for collection."  Mot. at 6.  Specifically, after the Rodriguez-Ocasio Account was

---

[1] The Notice of Motion is filed at D.E. 60.

charged-off, Credit One Bank began to sell the account balance to others for collection.[2]  *Id.* at 6. Starting in June 2023, the following transfers of the Rodriguez-Ocasio account were made during that process:  (1) Credit One Bank transferred the Rodriguez-Ocasio Account to MHC; (2) MHC transferred the Rodriguez-Ocasio Account to FNBM; (3) FNBM then transferred the Account to Credit Asset Sales; (4) Credit Asset Sales then transferred the Account to Resurgent; and (5) finally, Resurgent assigned the Rodriguez-Ocasio Account to LVNV.  Mot. at 8.  Each time the Rodriguez-Ocasio Account transferred hands, the transfer included "all claims or rights arising out of or relating to" the Account.  *Id.* at 8–9.

### B.    Earle Account

On or around November 19, 2021, Felicia Ann Earle ("Earle") opened a credit card account with Credit One Bank ("Earle Account").  Mot. at 9.  Like Rodriguez-Ocasio, Earle received a mailing from Credit One Bank including a credit card and a copy of the agreement governing the Earle Account (the "Earle Card Agreement").  *Id.*  The Earle Card Agreement also contained a provision that states she "accept[ed] this Agreement when [she] use[d] the Account."  *Id.*  Earle then used the card to make purchases.  *Id.* at 10.  After Earle failed to repay the credit card account, in February 2022, Credit One Bank charged off the Earle Account.  *Id.* at 10.

Once Credit One Bank charged off the Earle Account[3] and began the aforementioned process of selling the account for collection, the following transfers were made: (1) Credit One

---

[2] The Rodriguez-Ocasio Account included an account and a receivables account.  For purposes of the timeline of transfers, the Court refers to the "Rodriguez-Ocasio Account" to include both the account and receivables but notes any differences between the account and receivables throughout this Memorandum Order.

[3] The Earle Account also included an account and a receivables account.  For purposes of the timeline of transfers, the Court refers to the "Earle Account" to include both the account and receivables but notes any differences between the account and receivables throughout this Memorandum Order.

Bank transferred the Earle Account to MHC; (2) MHC transferred the Earle Account to FNBM;

(3) FNBM transferred the Earle Account to Credit Asset Sales; (4) Credit Asset Sales transferred

the Account to Resurgent; and (5) Resurgent transferred the Earle Account to LVNV.  With each

transfer, "all claims or rights arising out of or relating to" the Earle Account were also transferred.

*Id.* at 11–12.

### C.      Arbitration Agreement

Both the Rodriguez-Ocasio Card Agreement and the Earle Card Agreement (together, the

"Card Agreements")[4] contain a section titled the "Arbitration Agreement."   The Arbitration

Agreement provides:

> **PLEASE READ CAREFULLY—IMPORTANT—AFFECTS YOUR LEGAL RIGHTS**
>
> This agreement to arbitrate provides that you or we can require controversies or disputes between us to be resolved by BINDING ARBITRATION. You have the right to REJECT this agreement to arbitrate by using the procedure explained below.
>
> If you do not reject this agreement to arbitrate, you GIVE UP YOUR RIGHT TO GO TO COURT and controversies or disputes between us will be resolved by a NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY, using rules that are simpler and more limited than in a court. Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT. Arbitration will proceed INDIVIDUALLY— CLASS ACTIONS AND SIMILAR PROCEDURES WILL NOT BE AVAILABLE TO YOU.

Rodriguez-Ocasio Card Agreement, at 6 (emphasis in original).  Pursuant to the Card Agreements,

Plaintiffs could reject the Arbitration Agreement by sending a "written notice of rejection within

45 days after [the Agreement] was first provided."  *Id.* at 8.  The parties do not dispute that

Plaintiffs did not reject the Arbitration Agreement.  Mot. at 13; *see* Opp'n.

---

[4] Because the Rodriguez-Ocasio Card Agreement and the Earle Card Agreement contain an identical Arbitration Agreement, the Court refers to them collectively as the "Arbitration Agreement" and cites to the Rodriguez-Ocasio Card Agreement.

The Arbitration Agreement provides that "[f]or purposes of this agreement to arbitrate . . . 'we' or 'us' includes Credit One Bank, N.A., all of its parents, subsidiaries, affiliates, *successors*, predecessors, employees, and related persons or entities . . . ." Rodriguez-Ocasio Card Agreement at 6 (emphasis added). It further describes that "[i]n addition to you and us, the rights and duties described in this agreement to arbitrate apply to: any third party co-defendant of a claim subject to this arbitration provision . . . ." *Id.* at 8.

The Arbitration Agreement also includes a survival provision: "This agreement to arbitrate shall survive changes in the Agreement and termination of the Account or the relationship between you and us, including the bankruptcy of any party and *any transfer or sale of your Account*, or amounts owed on your Account, to another person or entity." *Id.* at 8 (emphasis added).

Lastly, the Arbitration Agreement has a forum selection clause and a delegation clause. The forum selection clause states the Arbitration Agreement is governed by the Federal Arbitration Act and "to the extent State law is applicable," "the laws of the State of Nevada." *Id.* at 6. Relatedly, the Arbitration Agreement contains a delegation clause, which provides that "controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide." *Id.* at 6.

### D.    Procedural History

After LVNV obtained assignment rights to Plaintiffs' accounts, LVNV filed collection actions in New Jersey Superior Court, Passaic County, Special Civil Part against Plaintiffs. *LVNV Funding LLC v. Rodriguez*, No. PAS-DC-1713-24 (N.J. Super. Ct., filed Feb. 5, 2024); *LVNV Funding LLC v. Earle*, No. PAS-DC-1832-24 (N.J. Super. Ct., filed Feb. 6, 2024) (collectively, the "Collection Actions"). Mot. at 15. Shortly after the Collection Actions commenced,

Rodriguez-Ocasio and Earle filed this action in New Jersey Superior Court, Essex County, Law Division, challenging the Collection Actions as illegal actions to recover debts (because Defendants were not properly licensed under the NJCFLA). Compl. ¶ 1. After the Collection Actions were consolidated with this action in state court, Defendants properly removed the consolidated action on May 28, 2024. Notice of Removal.

Following removal, the parties "engage[d] in expeditious discovery limited to the issue of arbitrability." D.Es. 6 & 11. During this limited discovery, Defendants produced the Card Agreements, the Notice of Change in Terms for the Earle Agreement, and the Purchase Agreements and Bills of Sale between Defendants upon each transfer of the relevant accounts and receivables. *See* Mot. 16–17. After the Hon. Michael A. Hammer, U.S.M.J. determined that limited discovery regarding arbitrability was complete, D.E. 52, Defendants' Motion followed. That Motion is fully briefed and ready for review.

## II.    LEGAL STANDARDS

### A.    Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity." 9 U.S.C. § 2. A party may petition a district court "which, save for such agreement, would have jurisdiction . . . for an order" compelling arbitration. 9 U.S.C. § 4. If the Court determines that an issue involved in the case is subject to arbitration, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

The FAA "reflects an 'emphatic federal policy in favor of arbitration dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). However, "a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009). In deciding whether to compel arbitration under the FAA, courts first consider "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem.*, 584 F.3d at 527).

### B.     The Court Will Apply the Summary Judgment Standard

"Motions to compel arbitration are treated either as motions to dismiss or motions for summary judgment." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 324 (3d Cir. 2022). The appropriate evidentiary standard depends on the pleadings. "[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (citation modified).

However, if (1) "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate," or (2) "the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did," the summary judgment standard in Federal Rule of Civil Procedure 56

7

applies and allows for limited discovery into whether there was an agreement to arbitrate. *Id.* at 774.

Here, the parties have engaged in limited discovery regarding the issue of arbitrability. *See* D.E. 11. "After limited discovery, the court may entertain a . . . motion to compel arbitration, . . . judging the motion under a summary judgment standard." *Guidotti*, 716 F.3d at 776. Although Defendants do not specify which evidentiary standard should govern, Plaintiffs assert that the summary judgment standard should apply to this Court's analysis. *See* Mot.; Opp'n at 3–5. Based on the above, Court will apply the Rule 56 summary judgment standard when determining whether this action is subject to arbitration. *See Guidotti*, 716 F.3d at 776. In other words, the Motion will be granted only if Defendants show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable trier of fact could find in favor of the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). In the context of a motion to compel arbitration, the party opposing arbitration must "demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause." *Guidotti*, 716 F.3d at 776 (citation modified).

Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "conclusory, self-serving affidavits are insufficient" grounds to deny the Motion, *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002), and statements of undisputed material facts may not "primarily rely on speculation

8

and legal conclusions" or "fail[ ] to genuinely dispute the facts," *Buxton v. Dougherty*, 821 F. App'x 70, 71 n.2 (3d Cir. 2020).

### C.    Nevada Law

Pursuant to the FAA, "[a] federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement." *Blair*, 283 F.3d at 603 (3d Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  The parties do not dispute that Nevada law governs based on the choice of law clauses in the Card Agreements.  "Nevada has a 'fundamental policy favoring the enforceability of arbitration agreements,' and [courts] will 'liberally construe arbitration clauses in favor of granting arbitration.'" *Uber Techs., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022) (quoting *Tallman v. Eighth Jud. Dist. Ct.*, 359 P.3d 113, 118–19 (Nev. 2015)).

## III.    DISCUSSION

Defendants argue that all claims in the Complaint must be arbitrated based on the Card Agreement's binding Arbitration Agreement that Defendants inherited upon assignment of Plaintiffs' accounts.  Plaintiffs do not dispute that an arbitration agreement exists in this case; rather, they argue that "[n]one of the Defendants have authority to compel arbitration."  Opp'n at 5.  In response, Defendants assert that each Defendant has the right to compel arbitration, but in any event, the Arbitration Agreement delegates the issue of arbitrability to the arbitrator.  Reply at 6–10.

For the reasons explained below, the Court finds that each Defendant has a valid arbitration agreement that Plaintiffs' claims fall within, and therefore, the parties have agreed to delegate the

9

issue of arbitrability to the arbitrator.  To the extent Plaintiffs challenge the scope or enforceability of the entirety of the Card Agreements, those issues are also expressly delegated to the arbitrator.[5]

### A.    The Arbitration Agreement Delegates the Issue of Arbitrability to the Arbitrator.

Plaintiffs' primary argument against arbitration is that Defendants, as assignees to the original Card Agreements, did not acquire the right to compel arbitration that originally belonged to Credit One.  Opp'n at 5–12.  Defendants respond by pointing to the Arbitration Agreement's delegation clause, which "commit[s] questions of arbitrability to the arbitrator," Mot. at 30, and argue that "[a]ll of Plaintiffs' arguments are therefore for the arbitrator to decide."  Reply at 7.  Plaintiffs do not address the delegation clause.  *See* Opp'n.

Under the FAA, arbitration agreements are irrevocable and enforceable contracts, and in that vein, contract principles apply to interpreting arbitration agreements.  *See* 9 U.S.C. § 2.  The Supreme Court has explained "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019) (citation modified).  There must be "clear and unmistakable" evidence that the parties intended to delegate arbitrability in order to refer the issue of arbitrability to the arbitrator.  *Id.* at 69 (citation omitted).  "[D]isputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes."  *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024).  If there is "clear and unmistakable" evidence the parties

---

[5] Accordingly, the Court does not decide the issue of arbitrability or reach Plaintiffs' underlying allegations that Defendants' conduct violated the NJCFLA.

intended to delegate arbitrability questions to the arbitrator, courts may not decide the issue. *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144 (3d Cir. 2022).

In determining whether parties intended to be bound by the arbitration agreement, courts apply "background principles of state contract law." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009); *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599–600 (3d Cir. 2020) (explaining that to determine if "the parties have agreed to arbitrate . . . we apply state-law principles of contract formation."). While Plaintiffs do not address what state law applies, they do not dispute Defendants' assertion that Nevada law applies "to the extent State law is applicable." Mot. at 15. And although Nevada substantive law applies based on the parties' Arbitration Agreement, the FAA also governs the Arbitration Agreement, and therefore, "state courts are compelled to follow [the FAA] and any federal law construing it." *Royz*, 517 P.3d at 908. Regardless, federal and Nevada law both require the Court to analyze "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (citation omitted); *SR Constr., Inc. v. Peak Bros. Constr., Inc.*, 510 P.3d 794, 798 (Nev. 2022) ("[t]o compel arbitration, a moving party must establish that there is an enforceable agreement to arbitrate and that the dispute fits within the scope of the arbitration agreement").

1.      *There is a valid agreement to arbitrate with each Defendant*

i.      <u>MHC Receivables, Credit Asset Sales, Resurgent Financing, and LVNV Funding have valid arbitration agreements with Plaintiffs</u>

*First*, the Court determines whether Defendants MHC Receivables, Credit Asset Sales, Resurgent Financing, and LVNV Funding each have a valid agreement to arbitrate with Plaintiffs, based on their status as successors of Credit One Bank.

11

The Card Agreements explicitly provide that Credit One Bank (and any successors) "may assign any or all of [its] rights and obligations under this Agreement."  Rodriguez-Ocasio Card Agreement at 8.  The Arbitration Agreements within the Card Agreements also contain a survival provision: "This agreement to arbitrate shall survive changes in the Agreement and termination of the Account or the relationship between you and us, including the bankruptcy of any party and *any transfer or sale of your Account*, or amounts owed on your Account, to another person or entity." *Id.* at 8 (emphasis added).  As contemplated in the Card Agreements, Defendants contend that when Credit One Bank transferred the Rodriguez-Ocasio and Earle accounts, and in each subsequent transfer (except for the transfer to FNBM), *all* rights under the Card Agreements were transferred.  Mot. at 10, 23–24.

During the parties' limited discovery, Defendants provided each Bill of Sale in the chain of title for the Rodriguez-Ocasio and Earle accounts.  Each Bill of Sale, except for the transfer to FNBM,[6] includes a line that the "Assignor" "has transferred, has sold, has assigned, has conveyed, has granted and has otherwise delivered to [Assignee], *all* of Assignor's right, title and interest in and to . . . the charged-off credit card accounts identified on an account level basis."[7]  D.E. 1-2, Ex. A at 48–58 ("Rodriguez-Ocasio Bills of Sale"); Ex. B at 64–74 ("Earle Bills of Sale") (emphasis added).  The Bills of Sale go on to say that the assignee receives "all claims or rights arising out of or relating to each account." *Id.*  The Bills of Sale then include a file listing the

---

[6] As discussed *infra*, Section III(A)(2), FNBM was only assigned receivables, not the full Rodriguez-Ocasio or Earle Accounts, and the parties therefore do not dispute that FNBM is not a "successor" under the Card Agreements.  Mot. at 26–27; Opp'n at 18–20.

[7] While the language in each Bill of Sale varies slightly, each Bill of Sale described contains language explicitly conveying and assigning all rights, title, and interest in the accounts and receivables that were transferred, not a subpart of either Account.

12

specific accounts, which include the accounts and account receivables transferred in each relevant transfer. *Id.*

In addition to the clear language in each Purchase Agreement's accompanying Bill of Sale of Plaintiffs' accounts, courts hold that when an agreement uses this language and specifically grants an assignee "all right[s]," the assignee "step[s] into the shoes of [the Assignor] and is entitled to enforce the arbitration agreement." *Bowker v. Midland Funding, LLC*, No. 18-11320, 2020 WL 5743044, at *2 (D.N.J. Sept. 25, 2020) (holding that Purchase Agreement's language granting assignee "all rights" allowed assignee to compel arbitration). *See also Ciotola v. RSA Ins. Grp., PLC*, No. 21-1020, 2022 WL 188183 (M.D. Pa. Jan. 20, 2022) (quoting *Smith v. Cumberland Grp., Ltd.*, 687 A.2d 1167 (Pa. Super. Ct. 1997)) (holding that the "arbitration clause was assignable as part of the 'contract as a whole' because '[w]here an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights.'").

In fact, as Defendants point out, several courts in this District have granted motions to compel arbitration in cases with very similar arbitration agreements, including for example, an arbitration agreement in which claims subject to arbitration "include[d] not only Claims that relate directly to us" but also included claims against "any predecessors and successors." *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *6 n.6 (D.N.J. July 25, 2019).

In *Clemons*, the Court determined that "Midland Funding, LLC is a successor to Credit One. As such, Midland Funding stepped into the shoes of Credit One and is entitled to enforce the arbitration agreement." *Id.* Similarly, here, the Arbitration Agreement explicitly includes "successors" in the definition of "we," and Defendants therefore "stepped into the shoes" of their

13

previous successor, and inherited all rights under the Card Agreements, including the right to compel arbitration.

Plaintiffs unpersuasively cite *Velazquez v. Midland Funding, LLC*, No. 18-43, 2018 WL 6492602 (D. Idaho Dec. 10, 2018), to support the proposition that courts have rejected assignees' right to enforce an arbitration agreement. Defendants correctly point out that Plaintiffs misstate this case's holding. In *Velazquez*, the issue was not whether assignees could enforce an arbitration agreement in general, but instead, whether assignees could enforce an arbitration agreement that post-dated the assignment. That is not the case here. In this case, the issue is whether the assignee's rights succeed the existing rights of the assignor. Opp'n at 18–20; Reply at 2–5. Put simply, Plaintiffs do not cite any binding or otherwise relevant authority that supports their reading of the arbitration agreement or other evidence that creates a genuine dispute of material fact regarding the existence of a valid arbitration agreement with each Defendant.

ii.     <u>Defendant FNBM is a co-party under the Arbitration Agreement</u>

*Second*, Plaintiffs also have a valid arbitration agreement with FNBM under the clear language of the Arbitration Agreements and Third Circuit caselaw supporting arbitration of all claims. Plaintiffs allege that FNBM was not assigned the right to compel arbitration because FNBM is the only Defendant that was not transferred the entirety of the Rodriguez-Ocasio or Earle Accounts, and only the receivables of each account. Opp'n at 18–20. Defendants respond that although FNBM is not a successor or assignee like the other defendants, FNBM may still compel arbitration because they are a "co-defendant . . . with parties who are themselves parties to an arbitration agreement with Plaintiffs." Reply at 6.

The Arbitration Agreements contain a provision that "[i]n addition to you and us, the rights and duties described in this agreement to arbitrate apply to: any third party co-defendant of a claim

14

subject to this arbitration provision." Rodriguez-Ocasio Card Agreement at 8. Plaintiff does not dispute that FNBM is a co-defendant in this action and does not dispute this unequivocal language in the Arbitration Agreement. Plaintiffs instead rely on *Rodriguez-Ocasio v. Midland Credit Management, Inc.*, No. 17-3630, 2021 WL 3758077 (D.N.J. Aug. 25, 2021) to support that FNBM does not have the right to compel arbitration because they are not successors to Plaintiffs' accounts. Opp'n at 19–20. In denying Defendant's motion to compel arbitration in that case, Judge Salas determined that as the defendants were only transferred the receivables—and not the full "rights to the underlying accounts," *id.* at *5, including the right to compel arbitration—the Defendant could not compel arbitration. *Id.* at *2. However, in that case, the defendant was not a "co-defendant" subject to the arbitration agreement at issue like FNBM is here, and is therefore meaningfully different.

Moreover, caselaw also supports FNBM's right to compel arbitration as a co-defendant. The Third Circuit and courts within this Circuit has consistently enforced arbitration agreements against a non-signatory to the agreement. *See, e.g.*, *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993) (enforcing arbitration agreement against non-signatory and explaining that "arbitration agreements may be upheld against non-parties where the interests of such parties are directly related to, if not congruent with, those of a signatory"); *see also Chase v. Check*, 158 F.R.D. 59 (E.D. Pa. 1994) (enforcing an arbitration agreement against non-signatories based on agency theory and reasoning that if plaintiffs could "avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint . . . the effect of the rule requiring arbitration would, in effect, be nullified.") (citation omitted). Because FNBM is a party in the chain of title and a co-defendant in Plaintiffs' Complaint, there is no dispute

15

that FNBM has interests that are directly related to the other Defendants who are successors to the accounts.

iii.        <u>LVNV did not waive its right to compel arbitration</u>

Lastly, Plaintiffs argue that despite any valid arbitration agreement, LVNV waived its right to compel Plaintiffs to arbitrate by filing the Collection Actions against Plaintiffs for the charged-off accounts in small claims court.  Opp'n at 20–26.  LVNV responds that the Arbitration Agreement lists small claims court as an exception to the claims subject to arbitration, and that Plaintiffs have not effectively demonstrated waiver.  Reply at 13–15.  The Court agrees with LVNV.

"Waiver is the 'intentional relinquishment or abandonment of a known right.'"  *Valli v. Avis Budget Grp. Inc.*, 162 F.4th 396 (3d Cir. 2025) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022)).  "Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred."  *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir. 1995).  As the agreement to arbitrate is a contract, a party can waive its right to arbitrate "either explicitly or through an implicit course of conduct."  *Id.* (citation modified).  "In the absence of an explicit waiver, we conduct an implied-waiver analysis, which looks to whether the right-holder 'acted inconsistently with an intent to assert its right to arbitrate,' and thus, 'evince[d] a preference for litigation over arbitration.'"  *Id.* at 405 (quoting *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334 (3d Cir. 2023)).

Courts in this Circuit have held that "[a] party does not waive its right to arbitration by litigating a different claim."  *Martin v. Discover Bank*, No. 12-2469, 2012 WL 6197992, at *3 (E.D. Pa. Dec. 3, 2012).  Here, the Arbitration Agreement includes a list of "Claims Not Covered," and provides that "claims . . . are not subject to arbitration if they are filed by you or us in a small

16

claims court . . ." Rodriguez-Ocasio Card Agreement at 6. In accordance with the plain language of this provision, the Court concludes that LVNV's Collection Actions were not subject to the Arbitration Agreement, and LVNV did not waive its right to compel arbitration in this action by filing the Collection Actions for the charged-off debt in small claims court.

It is not the case, like in cases that Plaintiffs cite, that either: (1) LVNV opted for litigation over arbitration in this action and now wants to change the forum to arbitration, *see Framan Mech., Inc. v. Lakeland Reg'l High Sch. Bd. of Educ.*, No. A-4062-04T1, 2005 WL 2877923, at *1 (N.J. Super. Ct. App. Div. Nov. 3, 2005) (finding that "by filing this lawsuit, [Plaintiff] elected its remedy and waived any otherwise applicable right to arbitrate."); or (2) LVNV delayed invoking the arbitration clause in this action until late in the proceedings, *Levonas v. Regency Heritage Nursing & Rehab. Ctr., LLC*, No. A-4995-11T4, 2013 WL 4554509 (N.J. Super. Ct. App. Div. Aug. 29, 2013) ("[D]efendants waived their right to invoke the arbitration clause by active and protracted participation in the litigation."). By contrast, here: (1) LVNV's Collection Actions were separate actions filed pursuant to the Arbitration Agreements in small claims court and (2) LVNV promptly sought to compel arbitration in this action. Put simply, Plaintiffs have not pointed to any action by LVNV that constitutes waiver of its right to arbitrate Plaintiffs' claims against it.

In sum, the Court determines that each Defendant has a valid arbitration agreement with Plaintiffs because: (1) Defendants MHC, Credit Asset Sales, Resurgent, and LVNV are successors expressly included in the Arbitration Agreement; (2) FNBM is a co-defendant to a successor; and (3) LVNV did not waive its right to compel arbitration by filing the Collection Actions.

2.    *Plaintiffs' claims fall within the Arbitration Agreement*

Having determined that there is a valid arbitration agreement between Plaintiffs and all Defendants, the Court next considers whether Plaintiffs' "particular dispute falls within the scope

17

of" the Arbitration Agreement. *Trippe Mfg. Co.*, 401 F.3d at 532. Plaintiffs argue that the "Complaint is not a Dispute within the Arbitration Agreement" because their claims "turn on Defendants' own regulatory obligations and methods of collection, not any provision of the card agreements or the bank-customer relationship." Opp'n at 15. In response, Defendants assert that Plaintiffs' claims are actually "about whether the assignment of the accounts themselves to an unlicensed party violated New Jersey law and rendered the assigned debts unenforceable." Reply at 12. In turn, Defendants contend that Plaintiffs' Complaint falls squarely within the Arbitration Agreement.

After considering the parties' respective positions, the Court finds there is no dispute of material fact that Plaintiffs' claims fall within the Arbitration Agreement. The Arbitration Agreement provides that "[c]laims subject to arbitration include, but are not limited to, any controversies or disputes arising from or relating in any way to your Account." Rodriguez-Ocasio Card Agreement at 6. As Plaintiffs' Complaint stems from the assignment of Plaintiffs' accounts, the claims plainly relate to Plaintiffs' accounts "in any way." *Id.* In fact, several courts in this District have granted motions to compel arbitration in similar cases, finding that "the Agreement broadly incorporates any claim related to the Agreement, including claims asserted against debt collectors or assignees like [d]efendants." *George v. Midland Funding, LLC*, No. 18-15830, 2019 WL 2591163, at *4 (D.N.J. June 25, 2019). *See also Hejamadi v. Midland Funding, LLC*, No. 18-13203, 2024 WL 3159316 (D.N.J. June 25, 2024) (granting motion to compel arbitration of similar claims); *Clemons*, 2019 WL 3336421 (same); *Church v. Midland Funding, LLC*, No. 20-10538, 2023 WL 3736048 (D.N.J. May 31, 2023) (reviewing an arbitration award following required arbitration). Therefore, the Court finds that Plaintiffs' claims fall within the Arbitration agreement.

18

>    3.    *The Arbitration Agreement's delegation clause is valid and delegates issues of arbitrability to the arbitrator*

Having found that there is no dispute of material fact that (1) there is a valid arbitration agreement between Plaintiffs and all Defendants, and (2) Plaintiffs' claims fall within the arbitration agreement, the Court holds that there is "clear and unmistakable" evidence that the parties intended to delegate arbitrability questions to the arbitrator. *Zirpoli*, 48 F.4th at 144. As such, the only way for Plaintiffs to "challenge . . . arbitrability must be 'directed at the delegation [clause] specifically to invoke a court's power to intervene.'" *Id.* at 145 (quoting *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020)).

Plaintiffs do not challenge the delegation clause; therefore, the Court may not decide the issue of arbitrability. *See* Opp'n. *See also Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 320–22 (3d Cir. 2024) (where "[t]here is no factual dispute about the existence of the agreement to arbitrate" and issues of scope and enforceability have been delegated to the arbitrator, "nothing is left" for the court to decide); *Lennar Communities Nevada, LLC v. Whalen*, 142 Nev. Adv. Op. 29, 587 P.3d 265, 268 (Nev. 2026) ("When an arbitration agreement under the Federal Arbitration Act clearly and unmistakably delegates the threshold issue of arbitrability to the arbitrator, the district court may not interpret the scope of the contract to determine arbitrability."). As a result, Plaintiffs' remaining arguments, including that Defendants' alleged violations of the NJCFLA rendered the entire contract, including the Arbitration Agreement, "void and unenforceable," Opp'n at 26, also must be decided by the arbitrator under the Arbitration Agreement's delegation clause.

## B.    Plaintiffs' Claims Will Be Dismissed

As the Court has determined that Defendants' Motion should be granted, all claims will be referred to arbitration. The remaining question is how to dispose of the claims. The Third Circuit

has explained that "the plain language of [FAA] § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."  *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004).  Here, however, neither party has requested that the Court stay this action pending arbitration.  Mot. at 18 n.9; *see* Opp'n.  Therefore, the Court will **DISMISS** Plaintiffs' Complaint *without prejudice*.

## IV.        CONCLUSION AND ORDER

For the reasons set forth above,

**IT IS**, on this **23rd** day of June 2026,

**ORDERED** that Defendants' Motion to Compel Arbitration, D.E. 60, is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Complaint, D.E. 1-2, Ex. A, is **DISMISSED** *without prejudice*; and it is further

**ORDERED** that if the arbitrator determines Plaintiffs' claims are not arbitrable, Plaintiffs may file an amended complaint within **30 days** of the arbitrator's final order on arbitrability; and it is finally

**ORDERED** that if Plaintiffs timely files an amended complaint, the Clerk of Court shall re-open this case.

Evelyn Padin, U.S.D.J.